Judge Carr,
This case turns wholly on the construction of Calvert’s will. The will was made in 1808, when he had a daughter about 15 months old, and theprospect of another child. That child, a son, was born in 1809. The testator died in 1812; his daughter in 1813 or 1814; his wife administered on his estate; intermarried with the appellee Otley, and in 1815, died. Administration de bonis non was committed to the appellant, as Sheriff. Otley delivered up to him all the estate; and afterwards filed this bill against him and the infant son of Calvert, claiming, that by the will, his wife had the use of all the property, both real and personal, till the arrival of the son at the age of 21; and that he, as her administrator, has the same right. The Chancellor has decided that such was the true construction of the will; aru! Land has appealed.
*216 In the construction of wills, the first enquiry is into the meaning of the testator. This is the animating spirit, the essence, the soul, of the will. The words are the clothing, the mere vehicle used, to convey his ideas. When we once ascertain the intention of the testator, that is the governing principle, and must prevail, unless it violate some rule of law. It would be a waste of time to quote cases to prove this. There is nothing technical about a will; no set form of words necessary. They are very often written (like the present) by persons who, wholly ignorant of forms,' use their own homely and awkward style to express their ideas; and if the language, however uncouth, be intelligible, and the meaning, when gathered, be lawful, it must be carried into effect.
In the case before us, the testator-had real estate, slaves, money, &c. and his wife, it seems, had a plantation of her own. The first clause in the will gives all his estate, real and personal, to his daughter Polly; and if his wife should have another child by him, the whole property to be divided between them; and if they die before they come of age or marry, all the estate to go to the children of his sister Polly Jones. Having thus given to the primary objects of his bounty, the fqe simple of his whole estate, he proceeds to carve out of it lesser and temporary interests. To his wife, he gives the power to have the full use of all his negroes, lands, and all species of property, except his money, till his children or child come of age or marry; then, one half of his said estate, with all his money, to go to his child or children; and his wife, during her life, to hold the other half allotted to her as above, and at her death, that to go to the children. The rest of his will is almost entirely taken up, in assigning funds, and giving other directions for the support and education of his children; about which he discovers great solicitude. They are to be supported and educated, 1st, out of the estate, of which his wife has the use; 2d, out of the monies due to him; Sd, his money in Bank is to be put out to interest, and the inte- *217 rest to go into his wife’s hands, and to he applied solely to the benefit and education of his child or children; 4th, if from loss of slaves, or other misfortune to his estate, it should not be found sufficient to support and educate his child or children, then, when they reach nine years of age, so much is to be taken from the money at interest, as will be sufficient to supply their wants, and the whole, if found necessary. 5th. His wife is to make no charge against his children, for board or clothing, or’ any other charge, which will affect their estates.
The question for consideration is, what interest did the testator mean to give his wife Kezia, in the use of his estate, real and personal. Did he mean to give her a fixed and certain interest, a term for years, which would expire when the youngest of his children should, if living, reach twenty-one ? Or, was this use a mere personal trust and confidence, given to her for a special purpose, and ceasing, of course, with the person ? My idea of the will is this. The testator was chiefly solicitous about his children, one, a girl of very tender years, the other, unborn. He considered that the half of his estate, real and personal, was a sufficient provision for his wife, in addition to the plantation which she possessed, in her own right. The other half he wished applied to the support and education of his children, during infancy, and to go into their possession, at their marriage, or attainment of age. To the care of their mother, he must confide them while infants. No other could supply her place to them, or be so safely trusted with their care. As she must have the care and the expense of rearing, sustaining, clothing and educating them, he gives to her the use, during their non-age, of the whole of his estate, and also the interest of his money, and assigns this as the fund in her hands, for their education and support; but, so soon as they married or came of age, and this care and expense would cease, the use of one half of the estate, and the interest of the money, were to cease also; and she was to retain the other half for life.
*218 It is insisted by the counsel for the appellee, that there is a clear, distinct, express gift of the use of the whole estate to the wife, till such period as would bring the children to 21; and that this vested interest could not be affected by the death of the wife before that time, but that her interest would survive to her representative. But, it must be recollected, that the polar star is the intention; and that to come at this, yon must take the whole will, not a single sentence; and you are also to look at the relative situation of the testator.' As to intention, when he was providing so anxiously for the support and education of those children, assigning first one fund, then another, to that purpose; injoining it upon his wife to make no charge against them, for board, clothes, or any thing else; can we possibly suppose, that he meant, in the event of her death, to abandon them to chance and dependence; that this fund, which he was so carefully husbanding for their support, should, by the same blow which deprived them of a mother, be transferred to her representative, and they cast upon the bounty, and committed to the care of an unknown guardian, an alien to their blood, with no tie to bind him to their protection, and interests in direct hostility with theirs? That, during a long minority of 18 or 19 years, the whole profits of his estate should be enjoyed by strangers, and his children dependent on them for the pittance which they might, to quiet their consciences, bestow on their maintenance and education ? It is impossible that such a construction can, for a moment, be considered as called for by the intention of the testator, or as otherwise than in direct conflict with his intention. No man (it seems to me) can look upon this will, without seeing at a glance, that the testator did not intend to extend the provision for his wife, a moment beyond her life; had no idea of vesting in her such an interest in any part (much less, the whole) of his estate, as, at her death, would survive to her representative. That portion, in which he evidently meant to give her the interest which should endure longest, is the half which she is *219 to retain, when his children come of age, or marry; and this is expressly limited to her life. How then can we say, that this half, so expressly limited, shall go, on her death, to her representative, together with the other half, as clearly intended, under no possible circumstances, to exceed her life, and very probably to- end much sooner. It was attempted to answer this, by stating an equal dilemma on the other side; that it is clear that the testator did not intend his children to have more than a maintenance till they attained their age, or married; and yet, if you do not suffer the property to go to the second husband, the surviving child must take it before either event. But, I deny this position. In the very first clause of his will, he gives his whole estate to his children. If I have shewn that he did not intend to vest in his wife, any interest which would survive her, there can be no question, that on her death, this clause would dispose of what she had; for, her interest was carved out of it, and only suspended its full operation, while that interest continued.
It was also contended, that the .clause, giving his wife the half of his estate for life, contemplated a state of things which never happened, and therefore can have no influence on the construction of the will, but must be thrown out entirely. This would violate two settled rules. 1. That the construction now must be the same ás at the moment of the testator’s death, uninfluenced by subsequent events. 2. That in the construction of wills, you must take the whole together.
It was contended also, that there was no personal trust here, but a charge merely, for support and education of children, upon the fund in the wife’s hands, which would follow it into the hands of her representative, and could be discharged by him. That the testator intended to confide to his wife the bringing up of his children, is most evident. His very silence, if he had said not a word on the subject, would have been decisive of that; for, where the guardianship is not given- by the father to another, the con *220 elusion is inevitable that he intends the wife to discharge that office; a conclusion, strengthened by the actual situation of things in the case before us. The child then born was a girl 15 months old; the other unborn. With whom could these helpless beings be trusted, but the mother ? But, the conclusion is not left to be drawn from the silence of the testator. Almost every clause in the will is predicated on the idea (which he seems to consider of course) that his wife was to have the bringing up of the children. Thus, although it is clear, that he thought the use of half his estate, a provision sufficient for his wife, he gives her the whole till they comé of age, or marry, and charges it in her hands, with their maintenance and education. So, of the interest of his money. He dedicates this exclusively to the education of his children, and directs that it shall be paid into his wife’s hands for that purpose. So again, he directs that his wife should make no charge against his children, for board or clothing, or any other charge, which would affect their estate. Why forbid her to do this, if she was not to have charge of them ? It being most clear, that the testator intended that his wife should bring up the children, it seems to follow, from the very nature of the thing, that it was a case of personal trust and confidence; and to those who know the important influence, which training and education exercise over the future life and conduct of individuals, there can be few trusts which would be considered more highly important, responsible and delicate; few more incapable in their nature, of being assigned or transferred. This, then, being a personal trust of such a nature, and the interest, (beyond the half which she had for life) being coupled with this trust, and given as the means of executing it, it must of course cease with the trust, which her death extinguished. I think I may truly say of this case, as Lord Mansfield did of Haywood v. Whitley, 1 Burr. 228, “ ’tis so plain, upon the true intent and meaning of this will, that it is a shame to cite cases upon it.” Yet as very many were cited, and most elabo *221 rately commented on at the bar, I will take notice of one or two.
But, I must first remark, that this case does not present at. all, the question, on which so many of these cited, turned: whether the estate given to the children was a vested interest, or contingent, and dependent on their marriage, or arrival at age. The first clause settles that point. It gives absolutely and immediately, the whole estate to his children; and subsequently, only excepts out of it, the use of the property, upon a particular trust, limited both as to time and object; and it is a rule laid down by the Court, in the case last cited, “ that wherever the whole property is devised, with a particular interest given out of it, it operates by way of exception out of the absolute property.-”
There were two cases cited from 2 and 3 Leon. Rep. A. devised that his land should descend to his son; but, that his wife should take the profits until his full age, for his education and bringing up. The widow died. It was resolved, that the second husband should not have the profits. “Nothing,” (say the Court,) “is devised, but a confidence. The wife is a guardian or bailiff to the infant.” These cases run on all-fours with that before the Court. It would be a waste of words, to point out the striking resemblance between them.
In Everts v. Chittenden, 2 Day’s Rep. 378, Joel Everts made his will, as follows: “ I likewise give to my wife the use and improvement of all my real estate, until my son Joel, (then five years old,) arrives at twenty-one years of age,” (then she to have and enjoy the use and improvement of one-third of the said real estate, during her natural life,) “she, my said wife, bringing up my said son, until he arrives at twenty-one years of age. Item, I give to my son J. E. the whole of my real estate, to be and remain an estate to him for ever, excepting the use to be disposed of, as above mentioned.” The widow entered upon the premises, married a second husband, and died, leaving her son a minor. The infant brought ejectmen *222 against the second husband for the land; and the question was, whether the wife’s interest ceased with her death, or continued until her son would, (if he lived,) attain twenty-one years. A case more precisely like the one at bar, cannot be imagined. It was argued with great ability by counsel, and all the cases in the books, bearing on the subject, discussed. The opinion of the Court, too, is given with excellent sense, and sound discrimination of the cases. They decide with great clearness, that the fee passed immediately to the son, subject to a personal confidence or trust reposed in the mother, which ceased at her death.
There are several other cases very strong for the appellant, such as Lomax v. Holmeden, 3 P. Wms. 175. Mansfield v. Dugard, 1 Equ. Cas. Abr. 195. Haywood v. Whitley, 1 Burr. 228.
The cases cited on the other side do not apply. They were either devises of property for a certain period, without any expression implying a limitation of the period, in any event; or, there was a trust raised by the devise, for payment of debts, or the performance of some other thing, which required that the trustee should hold till the term expired. In other words, the decision in those cases was founded on the settled doctrine of giving effect to the manifest intention of the testator. To follow those cases here, would be, not to give effect to, but to defeat, most palpably, the clear intention of the testator.
I am, therefore, of opinion that the wife’s interest ceased with her life.
Judge Green.
Thomas Calvert having one child, Polly, born September 15th, 1806, made his will in April, 1808. He had afterwards another child, Thomas, born January 27th, 1809, and died in 1813, leaving his widow, Kezia, and his said two children surviving him. The daughter, Polly, died *223 in 1814. Kezia, the testator’s widow, intermarried with J. T. Otley, the appellee, and died in 1815. The principal question in the cause is, as to-the extent and nature of the interest, given by the will to the testator’s widow, and whether that interest terminated by her death, or by the death of one of the children in her life-time.
In determining the question, as to the extent and nature of the interest given by the will to the widow, the intention of the testator is the sole criterion; and that intention is to be collected from the whole will; so that if the intention of the testator, in respect to the interest of the wife, plainly expressed, were found to be inconsistent with the intentions of the testator, in respect to the children, the express limitation to her would be restrained by construction, for the purpose of giving effect to the whole will, as in ex parte Davis, 6 Ves. 147. The testator gave to his wife his whole estate, during the minority of the son, his said wife, during that period, finding him with suitable education, maintenance and clothing; and if his said wife should die before his said son attained the said age, he appointed guardians and trustees for him, during his minority.” In this ease, it was clear that the testator contemplated the event of his wife’s dying during the minority of his son; and in that event, appointed guardians and trustees for the son. This shewed, that in the event of his wife’s death, during the minority of the son, the estate should immediately devolve upon the son, to be managed by the appointed guardians and trustees; otherwise, there would be nothing for them to manage; and this manifest intent in favor of the son, corrected the generality of the devise to the wife. So the estate given to the wife expressly, would be enlarged by construction, if that were necessary to effectuate the intention of the testator, in respect to his children or his creditors, so as to give effect to the whole will, as in Borraston’s case, 3 Co. 19. The devise was to the executors, until Hugh attained his age of 31 years, the profits to be employed towards the perfor. *224 manee of the will. Hugh died before he attained the age of 21, and the question was, whether the executors’ interest continued until he would have attained the age of 21, if he had lived. The Court held, that the interest continued, although it was admitted by the whole Court, that the legal effect of a grant or devise to one, until another attained the age of 21 years, was, that the estate expired upon the death 9f that other, before he attained his age of 21; because it became impossible, by his death, that he could ever attain that age, and consequently, that if the estate did not cease upon the death of that other, it could never cease; and, that it was necessary, in that case, to enlarge the estate of the executors, beyond the strict legal effect of the devise to them, taken by itself, in order to effectuate another expressed intention of the testator, to provide for the payment of his debts, &rc. and this term, until the time when Hugh would have attained the age of 21, would not have ceased, if the debts had been paid before it expired by its limitation, and the surplus profits would have belonged to the executor, who was not bound, at that time, to make distribution. Powell on Devises, 301, and the cases there cited. The reasons of the judgment in Borraston’s case are not given at large in the report; but are stated in subsequent cases, affirming the principle of that case, as in Lomax v. Holmeden, 3 P. Wms. 175.
In these cases, the estate or interest, expressly given, is limited or enlarged beyond the legal effect of the terifis in which it is expressly given, for the purpose of effectuating some other intention of the testator, plainly expressed or necessarily inferred from his will, which would be frustrated, if the express terms of the devise or bequest were allowed to have their strict legal effect. Examples of this rule may be found in the multitude of familiar cases, in which express devises for life or in fee simple, have been enlarged or limited to estates in fee tail, for the purpose of effectuating the manifest intention of the testator, as to the issue of the first taker. But, there is no example of the *225 Courts controlling, by construction, the legal effect of the express terms of a devise or bequest, unless some intention •of the testator, 'which would be frustrated without such control, appeared upon the face of the will, clearly expressed or necessarily inferred from the terms of the will itself.
What was the nature and extent of the interest, given to the wife of the testator, by his will? After devising his whole estate, real and personal, to his daughter Polly, and any other child he should have by his wife, and in case of their deaths under age and unmarried, to the children of his sister Jones, the testator proceeds: “Further say, I desire that it be in the power of wife Kezici, to have the full use of all my negroes, lands, and all species of property, except my money, until my children or child come' of age or be lawfully married; then, one half of said estate, with all my money, to go to my child or children; during my wife Ke.zia’s natural life, she shall be entitled to hold the half allotted for her as above, and at her death, to go to my children and their heirs, as above.”
There can be no serious doubt, that this clause of the will, standing alone, gave to the wife a beneficial and personal interest, either legal or equitable, to the profits of the whole estate, except the money, until the children attained their age or married, with remainder for her life, in one half of what had been given to her until that period. I incline to think that the interest given was a legal interest. “ The full use of property,” is an expression equivalent to the “profits” of the property; and a desire that theprofits of a lease shall be put out to the use and benefit of B. is a devise of the lease itself. Blamford v. Blamford, 3 Bulstrode, 101. This, however, is a question’of no moment in this case; for whether the interest be legal or equitable, it was transmissible to her representatives, unless it terminated in her life-time, or upon her death.
Some stress was laid in the argument of the cause, upon the expression, “ I desire it to be in thepower of my wife *226 to have the full use of all, &c.” as if this indicated an intention to give the wife only a personal authority or power, to be exercised by herself only in person, and which ceased with her life. This, 1 think, would be a dangerous refinement in the construction of wills. The devise of theprofits or full use is, in substance, a devise of the thing itself; and as a power to dispose, or give at pleasure, is equivalent to an absolute property, so I should think, an unlimited power to have is equivalent to an absolute right of property.
It was also argued that the expression, “ during my wife’s natural life, she shall be entitled to hold the half allotted for her as above,” meant that as the half was allotted to her for life, so the whole allotted above was allotted to her for life. ' Such a construction would produce singular effects. It would be giving her, at the same time, a life estate in half and the whole; or rather, a life estate in the- whole for a limited, time, and a half afterwards. The obvious meaning of that expression is, to designate what property it was, to a moiety of which s.he was to be entitled, after the children attained their age or married; to wit: half of what was allotted to her above; and it was used for the purpose of excluding her from any participation in the money. “Allotted to her as above,” designated the thing, of which she was to have one half, and not the estate or interest, of which she was to have half. Half of a life estate would be quite unintelligible.
It is also urged, that the intent of the testator was, that if his wife died before, his children attained their age, or married, her interest should determine, because he has given her an estate for life, in half of the estate, after that period; anti he could not have intended that she should have the whole estate longer than the half. An estate for years in all, with remainder for life in half, does not seem to me to imply any such inconsistency. Before the estate for life in the half could take effect in possession, the first estate in the whole must have expired in the life-time of *227 the widow. The condition that she should be alive at that time, was implied, just as if the first estate had been given to another, with remainder to his wife for life. The in-ten f of the testator to give a life estate in half, after the expiration of a specified term, does not at all conflict with an intent to give her the whole estate, for that term; even if he had contemplated the possibility of her dying within the term, as well as of her living beyond it. But it is perfectly clear, that the testator, when he made this will, never for a moment thought of the event of his wife’s dying befóte his children attained their age or married, and had no intention to provide for that event, either directly or indirectly. To say, therefore, that he intended to give her the whole for a given time, and if she survived that period, one half for her life, is not to say that he intended to.give her the whole for a longer time than he intended to give the half. It was possible, that her title to the half might never accrue; but if it ever did, then that interest must have lasted longer than her interest in the whole. The former interest was not to commence, until the latter ceased to exist. Upon the legal effect and apparent intent of this clause taken by itself, I think it clear that the wife took a personal and beneficial interest in the property devised to her, to endure until the children came of age or married, with remainder in one half of that property for her life; an interest which did not terminate by her death before her children attained their age or married. A grant to one during the minority of another, does not determine by the death of the grantee, but the interest is transmissible to the representative of the grantee. DedicoPs case, 3 Leon. 9.
This being the legal effect, and expressed intention of the testator, in respect to the interest of the wife, is there any other intention expressed in the will, or necessarily implied, which would be frustrated by carrying into effect this intention as to the wife, and which, therefore, renders it necessary, in order to effectuate the general intent of the *228 testator, to limit the wife’s interest to a shorter period than this clause of the will imposes on it; that is, to add the provision, that her interest should cease, if she died before the children attained their age or married? It is insisted that there is such conflicting intent.
The will proceeds, “I desire that my child or children, as above, shall be supported and educated in a christian-like manner, out of the money arising from the estate I leave as above;” “ and monies due to me, and all my money I may leave in the banks, to be put out at interest, and the interest only to go into the hands of my wife for the benefit of education of my child or children, and to be used for their benefit only.” He then provides, that in case of the loss of his slaves, or misfortune to his estate, there should not be a sufficiency to support and educate his children, then after they were nine years old, “ to take a sufficiency of the money at interest, for that purpose, if it should require all.” He then proceeds. “Further say, nothing is to be charged to my child or children by wife Kezia, for board or clothes, and in short, no charge that might affect their estate, as I have provided for them in the foregoing of this instrument, as well as for my wife Kezia.” The will concludes, “Further wish my wife to live on this plantation of her own, and endeavor to make a living in a plain and frugal manner for own benefit.”
The effect of these clauses of the will, was, to charge upon the property devised to the wife,, so much as would be sufficient to maintain the children; and if the interest of the money was insufficient to educate them, then so much more as would be sufficient, with the interest, to effect that purpose. If the interest was more than sufficient to educate the children, the surplus belonged to them; but if the interest of the money, and the produce of the property, were not sufficient to maintain and educate them, then the principal of the money at interest, was to be resorted to, as far as might be necessary, for that purpose. These funds, appropriated for the support and education, were to *229 be applied to that purpose by the wife; she advancing a due proportion of the profits of the property, and receiving the interest, of the money for that purpose; and she was, in no event, to bring any charge against the estate of the children.
Upon these provisions in favor of the children, and the first clause of the will, giving in terms, the whole estate immediately to them, it is said, that they were the chief objects of the testator’s solicitude and bounty, and therefore, the will should be liberally interpreted in their favor. If the first clause of the will were expunged, the estate of the children would be as completely vested in them, immediately upon the testator’s death, as it is by force of that clause. A devise to A. for years, or until B. attain his age, with remainder to B. vests the estate immediately in B. Borraston’s case, 3 Co. 19. Stanley v Stanley, 16 Ves. 489. A devise to his wife, until his children attained the age of 21 or married, would have been precisely the same in effect, and would have shewn as bountiful an intention in the testator, towards his children, as the devise in the form in which it stands. But, the provisions of the will, in fact, were intended by the testator, to favor his wife, and not his children. He gave her more, and to the children less, than the law would have given them respectively, in case of intestacy; one half instead of one third. The testator, as I have before observed, never contemplated the event of her dying, before the children attained their age or married; or he would have made a provision for that event. Allowing that the children were the chief objects of the testator’s care and bounty, what then? We cannot therefore disregard the testator’s expressed will. He gave to his wife, his whole property, except his money, charged partially with their maintenance and education, until they came of age or married; and has indicated no intention, that they should enjoy any portion of the capital of his estate, until that period.
*230 It is said, that taking into consideration the relations between the testator and his wife and children, it is impossible to believe that he intended, in the event of his wife’s marriage and death (which have happened,) that her second husband should succeed to all the profits of his estate, beyond the sum necessary to the support and education of his only surviving child, to the exclusion of that child. This is unquestionably true. The testator never had any such intention; and if he had anticipated either of these events, he would undoubtedly have taken care effectually, to prevent such consequences. But the testator had no such events in his mind, when he made his will, and had no' intention whatever, either way, in respect to them. He gave to his wife an interest in the property, and looked no further. That interest devolves on her legal’ representative; he gets it by operation of law, and not by the will of the testator; and the disposition of the law prevails, because it is not against the expressed or implied will of the testator. This is the unexpected consequence of his expressed will. If the Court were, when an event has happened, as to which the testator has declared no intention whatever, (and because we believe that if he had foreseen or contemplated the event, he would have provided for it) to declare that his will has provided for the event, and that, contrary to the legal effect of the estate vested by the express terms of the will; what would this be, but to make, not to expound, the will?
It is argued, that the testator’s wife was only intended to have the personal benefit of maintenance, out of the profits of the estate; a benefit which would, of course, cease at her death, and that the expressions that it should be in her power to have the full use, $?c. and the wish that she would live on her own plantation, and endeavor to make a living in a plain and frugal manner, for her own benefit, indicates such intention.
I have already observed upon the first of these expressions. The other, so far fiom indicating an intention to *231 limit his wife to a mere subsistence, to my mind, shews obviously, that he contemplated and wished his wife to accumulate money and property, for her own benefit, by the use of his property. He had already declared, that he had provided for his wife, and prohibited her from charging any thing to his children. Why this prohibition, if she could have nothing of her own to advance, as would be the case, if she was only entitled to a maintenance. His property was to be used upon her land; why recommend her to make a plain and frugal living, for her own benefit ? If she were only to be entitled to a maintenance, then her plainness and frugality would not be for her own benefit, but for that of her children. No inference, then, can exist, that her interest ceased on her death, upon the ground that she was only entitled to a maintenance.
Finally, it is said that the will gave to the wife no interest, but only created a personal trust and confidence for the benefit of the children, which expired on her death. What I have just said, shews that there was a beneficial interest vested in the wife, for her own benefit. Independently of the particular expressions, shewing an express intention on the part of the (estator, to give her such an interest, the terms of the bequest to her give, of themselves, such ait interest. Thus in 8 Vin. 292, pl. 15, it is said, “I give to my wife all my lease at F. and all my household goods, she maintaining my children; but if she should marry, then a moiety of it among my children. The children shall have no more than a maintenance, unless she marry.” This beneficial interest, however, was coupled with personal trust and confidence, for the maintenaneé, and in part, for the education of the children, out of the profits of the propprty devised to her; and the question is, whether, upon her death, as she could no longer perform the trust in person, her interest ceased. Powell, in his Treatise on Devises, p. 301, treating of such interests coupled with trusts, says, “ In all these cases of interests, the estate shall not determine, until the time limited, although *232 the object of their creation fail; as, if the children to be maintained,-die, or the debts be paid before the time limited to answer them, determines; and if the devisee in such cases, die, his representative shall have the lands in the mean time.” To support these propositions, he cites many cases, some only of which I have seen. It is alleged, that the cases do not support the author’s propositions. Let us examine some of them.
In the case of Balder v. Blackburn, Hob. 285, the testator devised the profits of his lands to his wife, to her own use and without account, till her daughter should arrive at the age of 18, provided the wife should pay the quit-rents and fines, and keep and bring up the daughter; remainder to the daughter in fee. The wife took a second husband, and died before the daughter attained the age of 18. The Court held, that this was “ a plain term given to the wife, to her own use, which accrues to the husband; and the keeping and education of the child is not such a particular privity, but it may be performed effectually by another.” This is precisely our case, exceptas to the wife being charged with the payment of fines and quit-rents. There the estate was given to the wife, until the daughter attained her age of 18, “ to her own use, without account;” here, “for her own benefit,” and consequently and neqessarily, without account. There, there was a direct personal trust upon the wife, to bring up the daughter at her own expense; here, there is a partial charge upon the property devised to the wife, for the maintenance and education of the children; and the personal trust to apply the funds to that purpose, is raised, not expressly, but by implication. There, the remainder was to the daughter; here, to the children. In that case, it was not necessary to enlarge the estate of the wife beyond the legal effect of the terms in which it was given to her, for the purpose of effecting the intention of the testator, to provide for the bringing up of his daughter; for, the remainder to the daughter would have taken effect immediately, on the termination of the mother’s es- *233 fate, by any means, before the daughter attained the age of eighteen.
It was said at the bar, that the direction that the wife should pay the fines and quit-rents, had the effect of eontinuing the wife’s interest, after her death; and in Everts v. Chittenden, 2 Day’s Cases in Error, 357, the Supreme Court of Connecticut suggests the same opinion. The Court, which decided the case of Balder v. Blackburn, suggest no such argument; and that provision could not have had, upon any just principle, the effect to enlarge, in the slightest degree, the duration of the wife’s interest. If land be devised to one without words of perpetuity, charged with the payment of money, an estate in fee is implied; because, the devise being intended.to benefit the devisee, as he might die immediately after the testator, he might lose by paying the money, if he had only an estate for life. This goes upon the inferred intention of the testator. But, 1 have never before seen a suggestion, that an express estate for life or years, could be enlarged by a charge on the devisee to pay money. If you could enlarge it in such a case, by construction, it must be enlarged to a fee; for, there can be no criterion to determine upon any intermediate estate, between that expressly given and a fee simple. This case, therefore, and the case at bar, appear to be precisely the same.
In the case of Smith v. Havens, Cro. Eliz. 252, the testator devised, that if his wife think good to bring up his children, that then she shall have his lands, until his son attain to his age of 34 years. The wife died before the son attained to that age; and it was resolved, that that event did not determine her estate. The question was, “ whether this was a matter of confidence only, or of an interest also in the land.” Here, there was, most emphatically, a personal confidence in the wife, which her death made it impossible for her to comply with; yet, being coupled with an interest, the failure of the personal confidence did not destroy the interest. No matter what reasoning induced the Court *234 to adjudge that there was an interest connected with the confidence; having determined that point, the estate was considered as continuing of course.
To the same effect, in this point, is the case of Cawthorpe v. Hayman, Cart. Rep. 25.
It is true, when it appears from other parts of the will, that a clear intent of the testator will be frustrated, by continuing the estate, in such a case, of the wife, beyond the period of her life, such construction will be given, as will effectuate the whole intentions of the testator, as in the case of ex parte Davis, already noticed; and so, if it appear that the wife, upon the whole of the will, was not intended to take any personal interest, but only to take the profits as guardian, and upon a personal confidence, for the use of the child, upon her death, her power expires. Thus, 2 Leon, 221, pl. 280, A. devised that his lands should descend to his son; but he willed, that his wife should take the profits thereof, until the full age of his son, for his education and bringing up. The wife married another husband, and died before the full age of the son;-and two Justices held, that nothing was devised to the wife, but a confidence, and she was a guardian or bailiff for the infant, which was determined by her death. . But contrary, if he had devised the profits of the land to his wife, until the age of his son, to bring him up and educate him; for, that is a devise of the land itself. It appears from this, that the real question in such cases is, whether an interest passes, or not ? If it does, then whatever personal confidence is connected with it, the death of the wife does not destroy her interest.
The case, before cited from Connecticut, was this: The testator bequeathed to his wife, the whole of his moveable estate; and gave her, likewise, the use of all his real estate, until his son came of age; “she, my said wife, bringing up my said son, until he arrive at 21 years of age. I give to my said son the whole of my real estate, excepting the use to be disposed of, as above mentioned.” The wife *235 married another husband, and died before the son attained his age; and the question was between the husband and son. The Court determined that the real estate vested in the son, subject to a personal confidence or trust reposed in the mother; and that she had no term for years in the land. The Court having determined that the wife took no interest under the will, but a trust and confidence alone was thrown upon her, the consequence necessarily followed, that the husband could claim nothing. In coming to this conclusion, the Court were obviously strongly influenced by the bequest of all the personal property to the wife, and also a third of the land for her life. These cases are distinguishable from the case at bar, in the decisive particular, that in those cases, the wife took no personal interest whatever in the property. In our case, she took some personal interest for her own benefit; and if she took any such interest, it did not terminate with her death. The plaintiff would, therefore, be entitled to recover, unless the interest of his wife in the estate of her former husband, so far as it depended on the children’s attaining their age of 21 years, or marrying, was destroyed by the death of one of the children in her life-time.
It was admitted by the counsel for the appellee, that if a grant be made to Ji. until B. attains his age of 21, and B. dies before he attains his age, the term ceases from the moment of B’s death, because it is then ascertained, that he can never attain that age; and if the term did not cease at his death, it could never cease. An interest given by will in the same terms, would have the same effect, unless there were something in the will to shew, that the testator intended that the estate should continue, noiwithstanding the death of the infant, until he would have attained his age, if he had lived; which was Borraston’s case, 3 Co. 19, where the devise was for the payment of debts. In the absence of any evidence of intention to the contrary, the effect of a devise, is the same as of a deed. This was decided in Lomax v. Holmeden, 3 P. Wms. 176, and *236 Mansfield v. Mansfield, 8 Vin. Abr. 291, pl. 13; the same case in the name of Mansfield v. Dugard, Equ. Cas. Abr. 195.
When the testator wrote his will, he had one child living, and expected, though not confidently, another. He therefore gives his whole estate to his living child, Polly; and if he should have another, to both. In the after part of his will, he usually speaks Of his child or children, meaning his child Polly, if he had no other, and both his children, if he had another. He gives all his estate, except his money, to his wife, “until my children or child become of age, or be lawfully married.” He meant by “children,” both, if he had two; and by “child,” his child Polly, already born. His will was, in effect, to give to his wife, “ until his child Polly, if he should have no other, should come of age or marry,” or, “until his children, Polly and another, if he should have another, both became of age or married.” Upon the death of Polly, this became impossible; and upon the principles already stated, the wife’s interest in the whole terminated, and her i’ight to one moiety for her life, took effect in possession; that being a vested remainder depending on her former estate, and the other moiety vested in Thomas, in possession. Or, if the term for years of the wife, in the moiety of the estate of which the remainder was given to her for life, merged in this vested remainder, (Black v. Pagrave, Cro. Eliz. 532;) then she was entitled, upon the death of the testator, to a life-estate, immediately in that moiety, with remainder vested in the children in fee; and to an estate for years in the other moiety, until the children attained their age of 21, or married, determinable by the death of both or either of them, before those events occurred, with a vested remainder in fee to the children. It is immaterial to enquire, whether the term for years, in the moiety given to her in remainder for life, merged in the life-estate; since her interest, in the events which have happened, was precisely the same, whether the term was .merged in the life-estate or not.
*237 Upon this construction of the will, upon the death of Polly, the interests of the widow and surviving child, became separate; each being entitled to the profits of the moiety of the estate; and the child must have been supported and educated out of the interest of the money, and the profits of his moiety of the residue of the estate, under the guardianship of his mother, as long as she lived, or until he attained his age or married. This consequence may be supposed to contradict the intent of the testator, to give his wife the whole profits, charged as aforesaid, until his child or children came of age or married. But it does not. His intent was, that if he had another child, his wife should have the profits of the whole, in consideration of supporting both; which she could not do, after the death of one; and upon the death of one, her interest ceased in a moiety, which vested in possession in the surviving child, as upon the death of both before their age of 21 or marriage, that moiety would have vested in possession, in the children of the testator’s sister; the purpose, for which a moiety was given to the widow, having ceased, as well in the event of one, as of both. It is true, that this results, not from any expressed intention of the testator, in relation to the disposition of his property, in the event of the death of one only, or both of his children. For as to that, he had no intention; since he no more contemplated the death of both or either, before their age or marriage, than he contemplated the death of his wife, before that period. If he had contemplated the event of the death of one of the children, before his or her age or marriage, he probably would have continued his wife’s interest in the whole estate, until the other attained full age or married. The effect of the deaths of one of the children and the widow, before the children attained their age or mai'ried, upon the duration of the estate of the wife, must be determined, not according to the intentions of the testator, (for, he had no intentions touching these events;) but according to the legal effect of those events, upon the estate given by the terms of the will.
*238 The difference between my construction of this will, and that adopted by the majority of the Court, does not materially affect the interests of the parties, in the events which have happened. I have gone thus at large into the subject, only for the purpose of avoiding, if I could, the establishment of a precedent for the construction of wills, of which I do not approve.
Judge Coalter.
As the testator lived until after a second child was born, and as the will speaks at his death, and may have been read over by him the day before, and have been intended as applying to the then situation of his family, it may, perhaps, be most proper to consider it as then made, and as speaking of his two children.
It may also be proper to consider the questions arising under this will, as at the time of the death of Polly the daughter, and as if a suit had then been brought by Thomas, the surviving child, against his mother, to ascertain their respective rights on that event; or rather, to ascertain the then rights of Kezia, the widow of the testator, in his real and personal estate; for, except so far as limited by those rights, the whole would belong to the surviving child.
It is contended, on the one side, that she took an estate for years in the whole property, real and personal, to continue until the children came of age, or married; and that nothing but the marriage of both under age, or the coming of age of both, or the marriage of one, and the coming of age of the other, could determine this term for years,- until the youngest child actually did, or might have come of age; and that after this, she was to have one half for life. On the other side, it is contended, that, taking the whole will together, it must be construed to mean, that the term for years was to cease at her death, if she died before they married or came of age: that so long as they all lived, or *239 any one child lived and was under age, she still alive, and charged with their or its support, and in want of a support herself, she was to hold all; but when she died, even if they or either of them was then under age, as she could no longer support them, nor wanted any support for herself, the term ceased.; in the same manner as if the testator had said, “ For the support of my wife, and to enable her to support and educate my children, until they marry or arrive at 21 years of age, I give her power to use my whole estate until that time, provided she lives so long. If she dies before that time, then it is to go to them; but, if she lives beyond that time, then she is to have one half as long as she lives.”
But, if the will cannot admit of this construction, then it is contended, that the term for years ceased, nevertheless, at her death, and did not go to her personal representative; because she took a mere personal trust and confidence, uncoupled with such interest, either in herself or third persons, as would transmit the term to her personal representatives: that there was no interest of third persons to protect, after her death, (the children being better protected by receiving the whole estate, than a mere right to maintenance and education charged on it;) and her temporal comfort, the other object, ceasing with her life, then there was no future interest, as it regards her, to protect which would require the continuance of the term; and consequently, that on this ground, if not on the other, it must cease with her life, as aforesaid.
It was also said, though not much pressed in the argument, that on the death of Polly, the term for years was determined, unless there was something in the will which would prevent it and continue the term beyond that time; and that if it was determined by that event, either the whole estate then passed over to Thomas, or one half to him in fee, and the other half to his mother for life.
- According to these last pretensions, if the term for years ceased by the death of Polly, and the whole estate went *240 over to Thomas, then the personal representative of the wife would be responsible for the use she had of it, from that time; or for the use of one half of it, if she was entitied to the other.
It is proper, therefore, to examine the question, as one between Thomas and his 'mother,"in order to ascertain her rights on the death of Polly; and also to examine it as one between him and her personal representative, in relation to the continuance of the term after her death.
If the will had given to the wife a term of this kind, uncoupled with any interest, charge, trust, or any thing to shew that a further duration of the term w,as intended, and without any express direction, that she was to hold, until they or the survivor actually had, or should have come of age, had they lived, it may be admitted that it would have determined on the death of one or both, under age. But, this operation of the rule of law on such an estate, may be done away, either by express words in the will, or by manifest intent, deducible from the whole will, as in Borraston’s case, 3 Oo. 19; where, from construction, it was determined it should continue, until the son would have come of age, had he lived. Whether the term, then, determined on the death of Polly, or- not, will depend on a sound construction of the will, taken all together. It seems to me, from its whole structure, not only that the wife was intended to have the nurture and education of the children; but that a provision for her, at least during her life, was intended to be made. ' She was to make a living in a plain and frugal manner, for her own benefit. For these purposes, she is to have the use of the whole, until they come of age or marry; and then, they are to take one half, and she the other half for life. She is no longer charged with support and education; and they must have the means of their own, and one half will be enough for her. But, if the term was to cease on the death of Polly, either the whole must go over to Thomas, or her life estate must then commence in a half, and the other half must *241 go over to bim. He then would take either the whole or one half, before he came of age or married; which would be contrary to the letter of the will. Would it be according to its intention ? If it would, then his nurture and education by her would cease; for, if he took all, nothing would be left for her to support him with; if one half, she would only have the means of her own support left. She would'not be compelled, (nor would she forfeit that by a refusal) to support him out of it; nor would his support be a charge on that part, leaving his half to accumulate; and although the will speaks at the death of the testator, yet it may not be improper here to remark, that when he had but one child, he designated the whole as a fund for the support of that child, and the mother; and even charged monies with education also. Suppose Polly had come of age or married; this would not have determined the term, until the other had also come of age, or married; although Polly would want, and might have been entitléd to,'some support; and if she had died after marriage, and before Thomas came of age, would this put an end to the term'; and would the whole estate go over, one half to her children, and the other to Thomas? Or, iffonly half went over, who would get it, Thomas or her children; or must they both be supported out of it ?
But again. If the term ceased by the death of Polly, and' the whole estate went over to the survivor, then, as before said, there would be nothing left for the maintenance of the wife, which, it seems to me, would so entirely defeat the will, that such construction could not be put on it. But, then it is said, the term only would cease, and her life estate in one half would begin, discharged from the support of Thomas, as much so, as if he had come of age; that the remainder in her for life, in one half, though limited on a term which has ended, not by marriage or coming of age, as specified in the will, but by another event, (and which, by that will, was to take effect, not on the death of one or both, but on their marriage or coming *242 of age,) was nevertheless a vested remainder in her, to take effect on such determination of the'particular estate; and, that it was not a contingent remainder, which would be bad, there being no freehold to support it. But, even if this would be the case, and she would thus not be deprived of all support; yet, her right to support and educate, and take the surplus would be defeated; as also, the intention of the testator, that she should have the rearing and education of the child, who was of very tender years, and who would thus be thrown on his guardian. Indeed, I understood it was admitted in the argument, that the trust, being for both, did not determine by the death of one; and that no Court could invade her right to rear and educate out of this fund, after which she was entitled to the surplus:,that she would have forfeited the whole, had she failed to support and educate, and would not have the residue on mere-, ly paying for hoard, Syc. But, if she is thus forced to take one half in remainder, long before the time specified in the will, it will be by mere operation of law upon the estates granted in the will, and not from any intention expressed or thought by the testator. But, as before said, although operations of law, of this kind, may take effect, when there is nothing in the will to control; yet, if there be over-ruling provisions there, these general rules of law will yield to such intention.
If I have succeeded in shewing, that the whole estate would not have gone over to Thomas, on the death of Polly, but. that to do so, would manifestly violate the intention of the will; if a similar violation would take place in case one half went over; the argument is equally strong as to it. But if the term did not cease on the death of Polly, then the question, whether the remainder for life in one half was vested or contingent, does not arise. Borraston1 s case shews, that the term may continue beyond the time, when, in ordinary cases, it would cease by the rule of law, if such continuance appears by the-will, to have been intended. It seems to me, it .was intended that it should continue after *243 the death of one child, living the mother; whether beyond her life, it is not at present, necessary to consider, But if it did continue beyond the death of Polly, then the remainder for life in one half, if vested, did not then begin in possession, the particular estate not being ended; and this would decide the question, as between Thomas and his mother. If, however, the- term then ceased, and the remainder was contingent and void, then the whole would also go over to the son, and leave no support to the wife; which would be a strong argument to prove, that the rule of law ought not to be permitted thus to operate on the term, and produce this effect, if by any sound construction of the will, it might be avoided.
My impression is, that if there had been nothing else in the will, which, by construction or otherwise, would continue the term beyond the death of Polly, the mother could not, on that event, take one half for life, as a vested remainder in her; but whether she would or not, I shall not stop to enquire; being satisfied, as before stated, that there is enough in this will to continue the term, down to the time when the youngest child shall attain, or would have attained his age of 21 years; and had the mother survived that time, that she would then have taken one half for life.
This brings us to the enquiry, whether, notwithstanding the death of the mother, before Thomas arrived at his age of 21 years or marriage, the term is to continue and pass to her administrator, until it is determined by the marriage, or coming of age &c. of Thomas ? This also, is to be determined by the whole will.
A provision was intended for a two-fold object. First, for her personal comfort, and to enable her to make a plain and frugal living, for her own benefit; and secondly, to enable her to raise and educate the children, until marriagej or their coming of age. For this purpose, the estate is to be kept together, and used on her plantation, and his debts to be paid out of the money he leaves behind. She is to *244 charge nothing for their board and clothes; and in short, no charge is to be made that may affect their estate,.inasmuch, he says, “as he has provided for them in the foregoing of this instrument, as well as for his wife.” Was it his intention, that in .case his wife died, during the minority of his children, that the estate still should be kept together on her farm by her heirs, that they might make a living for themselves, merely deducting the price of board and tuition, &c. of his children, though she could not have held it discharged of personal care, &c. ? Or, was he looking simply to her personal comfort, and to that dependence on her for sustenance and education, calculated to preserve the parental authority; at the same time that she would be rewarded by the surplus, to be taken for her own benefit, for that care and attention he expected her to pay ? He thus provides for them, as well as-foe her. He looked to her personal comfort, and to a discharge by her, of the most important duties to his children, and enables her to discharge them. He looked to no other state of things. Shall we carry the provision farther? When they are no longer a charge, either for education or support, still she is to be provided for. Her comfort is looked to: though not beyond the time, when she will cease to want it. When that event happens, he looks to no one beyond her, but his children, and those of his blood, who are to take in remainder after them. W-hy shall this event’s happening at one time, have a different effect from what it would have, happening at another? If we give it these different effects, it must be because we are forced to do so, by the rules of law operating on the estates devised, from which we cannot escape by any sound interpretation to be put on the will. I think we are not driven to this; but that the whole will justifies the interpretation that-has been contended for. Plain men, unversed in legal subtilties, I think would put this construction on it; and it would seem, until otherwise advised, the appellee himself so considered it. Unlettered *245 ■men are generally very, good judges of the intention of wills,, written by unlettered men.
On the whole, I.am for reversing the decree.
The President concurred with Judge Carr, and the decree was reversed.*