Carr, J.
This case depends upon the construction to be given to that clause of Philip Dold’s will, under which the appellants claim. The case is certainly not clear of doubt; but, after the best consideration I can give it, I strongly incline to think the chancellor’s understanding of the will is the true one.
There is nothing technical in the will; the simple inquiry is, what this testator meant by the words he has used ? In such an inquiry, I do not think we can derive any aid from reported cases. The testator had six children; two sons and four daughters. He seems to have intended to deal upon the principle of equality, between his sons, and his daughters also; giving to the first, land, slaves and money, to the last, slaves and money. The will is sensibly written; and we easily discern the scheme of the testator running through the whole of it. To one of his sons, he gives his portion, directly and absolutely: but he could not trust the other with property; therefore, he gives his portion to trustees, to be held by them in trust, and the proceeds to be annually employed for the support and maintenance of his son, and for the education of his children; and, after the death of the son and his wife, the fund to be equally divided *262 among the children. Under this devise, it would not be u contended, that the children of the son, after they came to fuH age, or separated from the family, could come in for any of the annual proceeds of the trust fund ; for it is to be apph'ed to the maintenance of the son, and education of his children. The testator’s four daughters were all married. There' is nothing in the will, or in the record, to shew that one was more the object of his bounty or his affection than the others. He seems to have intended to give them about the same portion; to each three or four slaves and 1000 dollars. Two of his daughters, Nancy and Catharine,'had married men in whom he had confidence: the other two, Elizabeth and Martha, had riot been so fortunate. This circumstance varied the form of the legacies. To the two first, he gives the slaves and money, directly and simply, saying nothing at all about their children, and shewing that the daughters alone were the objects of his bounty. With the two last, he proceeded differently. He gave to the same trustees, three slaves and 1000 dollars-in cash: “the negroes to be kept and used, and also the interest of the money, for the support of his daughter Elizabeth, and for the maintenance and education of her children, and at the death of his daughter, the said negroes and money to be equally divided among her children.” Do we not perceive in this bequest, equally as in the others, that his daughter was the object of his bounty? He could not give it to her at oncej for then the object of the gift would be defeated, as it would go to her husband ; but the trustees were to hold the fund and apply the profits to her support, and the maintenance and education of her children. The maintenance and education of her children, was the object most important to her comfort and happiness; it was a part of the burden she had to bear. If the money had been paid to her at once, her husband might have gotten and diverted it from its destined purpose. The trustees are, therefore, to apply it to the education &c. of the children. But, I presume, nobody would contend, that the children could have called on the trustees *263 for any part of these profits, after they were educated and turned out in the world. It is very clear to me, the testator had no such idea: the maintenance and education he contemplated, was during infancy merely, when the mother had to support them. The whole fund was to be theirs at the mother’s death. If he had intended, that as each child came of age, he should have his share of the profits paid to him annually, would he not have said so ? But such a provision would have defeated his chief object, the support of his daughter during her life. The fund at best was a very small one; not more I should presume than 400 dollars a year. Suppose his daughter had had five or six children, and each was to have his aliquot part; his daughter would starve. Next comes the bequest to his daughter Martha, which I consider precisely like the last, in substance : “ I give to my said trustees, my negroes &íc. and 1000 in cash: the profits of those negroes, with the interest of the 1000 dollars, I direct may bo applied to the maintenance and support of my daughter Martha and her child; and at the death of my daughter, the said slaves and money, to be given to her child, or children, if she has more than one &c. the above advances to be made to my said daughter Martha, independent of any claim I may have against her husband.” Now, I ask, can we suppose that, under this bequest, the testator intended to vest in the child of his daughter, an equal interest with her mother, in the annual profits of the trust fund ? and that when she grew up and married, she would have a right to appropriate this half to herself during her mother’s life ? I can never believe it. Look at the other provisions of the will. They shew, that it was no part of his scheme to enable the children after they came of age, to claim any part of the profits of the trust fund. His daughter Martha, when he made his will, had but one child, and therefore he mentions the support of her child: suppose she had had, afterwards, four or five children more, did he not mean that they, equally with the one then born, should have a support ? No doubt of it: *264 for we see, that when he comes to dispose of the fund at her death, it is to her child or children if she should have more than one. He meant the same benefit to ail her children, both during her life and at her death; and that benefit was the same sort of support that he had provided for the children of his other daughter and son, who took through the trustees. No matter then, how many children Martha had had, they would have had the same right with the eldest, when they came of age, to have taken, thenceforward, their equal portion of the profits, and thus to have beggared their mother. Could the testator have meant this? The mother then old and sinking in years; the children young and able to make their way in the world; could he have intended to leave his own daughter thus exposed to want ? The voice of nature cries out against it. He knew that she would be solely dependent on what he gave, for her bread : he knew this, for we see that her husband then lived on his land, which in another clause of his will he directs his executors to sell, and that this husband was then indebted to him. With this knowledge, would he, even if he had been sure his daughter would have no other child, have given to the one she had, half of the slender pittance he had left her ? I cannot think so. But further: immediately following the bequest to Martha, he says “ the above advances, to be made to my daughter Martha, independent of any claim,” &sc. The above advances; what advances? Why, the profits of the negroes, and the interest of the 1000 dollars; those are the immediate antecedents. These advances were to be made to his daughter Martha, and she is to have the whole of them, without any deduction for what her husband owed him. This, to my mind, is the clear meaning of the whole sentence. Again : in the residuary clause, he directs the residue of his estate of every kind to be divided into six parts; of which he gives one to Jesse ; one to Catharirie, and one to Nancy ; then he adds, “ I direct my trustees above mentioned, to receive and apply one sixth part to the use and benefit of my daughter Eliza *265 beth, one sixth part to the use and benefit of my daughter Martha, and the other sixth part, to the use of my son William—these portions are severally to be used for the benefit of my said children during their lives, and at their deaths to be divided as their monev legacies are directed to be divided shewing that he meant this residuum to stand precisely in the situation of the other legacies: and here we see, the profits were left to his children for their lives, without any participation of their children with them during that period. Neither, therefore, did he intend any participation in the former case. I am for affirming the decree.
Cabell and Brooice, J. concurred.
Tucker, P.
This case is certainly not without difficulty,- and the very imposing view which has been taken of it by my brother Carr, naturally gives rise to doubts, about the correctness of the opposite opinion which I shall express. That opinion is, that the clause in this will under consideration, does not give to Martha McDowell, the right to the profits and interest of the estate, devised to the trustees, exclusive of her daughter.
I think it obvious, that there is not, in the words of that clause, any direct gift to Martha. There is a trust, indeed, created for her benefit, and that of her child; the testator having expressly created two trustees, and manifested by the terms “ may be applied,” his intention that those trustees were to receive the proceeds or annual profits of the fund, and apply them to the maintenance and support of his daughter and her child. The trust thus created, if words are to govern us, where they are plain and unequivocal, is a trust not for the support of the daughter only, but of the daughter and her child. Could the trustees have been justified in applying the whole of the profits of the trust fund to the use of the mother, if that mother had unnaturally left her child to suffer, or if they perceived that whatever came to the mother’s hands, passed immediately into the father’s, *266 and was wasted by his prodigality, while his family were left unprovided ? I think not. Nor can I perceive, how we can get rid of the plain import of the words, unless there is something in the will which shall alter and control them. case Robinson v. Tickell, 8 Ves. 142. is a good deal like this; and, though I readily agree that cases upon wills very often confuse instead of elucidating, yet I shall advert to it, as shewing, that where words are not so strong as here, they have been considered as excluding the mother from the absolute interest, and raising an interest in the child. There, the testator bequeathed £ 2000. reduced annuities, to H. to have the interest during her natural life; remainder to his niece Rebecca for her and her children’s use: H. died: Rebecca and her husband having sued for the dividends, the chancellor, speaking of the bequest, said, “ The bequest is to Mrs. Robinson in the first place; and if it stopped there, it would be absolute to her. But the will goes on to declare a use; which is for her benefit and that of the children.” He, however, directed that the payment should be made, in that case, to the mother and her husband, upon the authority of Cooper v. Thornton, 3 Bro. C. C. 96. 186. That was a case, where a legacy was given to A. to be divided between himself and his family; and the question was whether the payment to A. was a good payment ? It was decided to be good. And so, in Robinson v. Tickell, from the relation in which Mrs. Robinson stood to her children, whom the chancellor considered as being cestuis que trust as well as their mother, payment was directed to be made to her and her husband. So, in 2 Leon. 221. pi. 280. cited and relied on in Land v. Otley, 4 Rand. 221.234. A. devised that his lands should descend to his son, but he willed that his wife should take the profits until his full age, for his education and bringing up. It was held that nothing was devised to the wife but a confidence, and she was guardian or bailiff for the infant, which determined by his death.
*267 The first of those cases (Robinson v. Ticlcell) is stronger in every respect than this; for there, there was a devise to Rebecca, of the interest and dividends, which she was of course to receive, for the use of herself and children. She was the trustee, and the property was to pass through her hands as the conduit. Here, Miller and Stuart are the trustees, and the profits and interest are to be applied by them (as I understand the will) to the maintenance and support of Martha and her child. In that case, there might be a pretence for considering the bequest as a bequest to the mother absolutely, and the reference to her children, as merely indicating one of the motives which led to it. In this, there is no bequest to herself, but a bequest to trustees, equally charged with the maintenance and support of her child as of herself.
The case in Leonard wants, indeed, the characteristic of a beneficial interest in the mother. But still it was a devise that the mother should take the profits for the education and bringing up of the son; and yet it was not considered as a gift to the mother, but only as a trust for the son.
Let us next see, if there is any thing in the will, which controls the .plain meaning of the words. The testator had two daughters married, perhaps, to men in whom he had confidence : to these he bequeaths his bounty, directly and without the intervention of trustees. But as to Elizabeth and Martha, what he bequeathed to them was given to trustees (it is supposed) lest it should be wasted by their husbands. Still, if the mother was the only object of his bounty, the testator had only to provide, that the profits should be paid over to her. Why say any thing of the child ? He (or rather the scrivener who drew the will, and who was very probably, the intelligent and learned gentleman who first attested it*) has systematically pursued the same language in this clause, and in the devise to Elizabeth; and has used similar language in the devise to William. Why, in all these cases, is he provident about the *268 families or children of the respective legatees ? Because, * ' in relation to his son, he feared that if the whole profits were paid over to him, without some provision for his family, they might be left, as too often happens, to suffer by his thriftlessness. And so with the daughters. But for the provision of the will, the whole of the annual proceeds would be paid at once into the hands of the daughter, who might, under -the influence of a thriftless husband, pass it into his hands, to be squandered to the injury and suffering of their little family. Is not the will, in this case, just such as might be expected, if the testator was under the influence of the fear of such evils, and desired to guárd against them ? I think so.
The clause which provides, that the advances made to Martha, were to be independent of. any claim he had against her husband, is fully satisfied, by reference to the interest given her in one half of the profits, and does not require that she should be construed to take the whole. And the residuary clause, so studiously different from that which we have been considering, so far from impugning the construction which the appellants contend for, seems to me to sustain.it: for it shews, that the testator meant a different béquest here, and that he or his scrivener well knew howto use different expressions, when they intended different limitations.
I am of opinion, therefore, that the daughter is to he considered as entitled to a portion of the profits of the funds created by the clause in question. I am, however, further of opinion, that under this will, although the trustees might in their discretion have declined to pay the whole profits to Mrs. M’Dotoell, and might have themselves applied a due portion for the maintenance and support of her child, if they found the funds misapplied; yet they were, prima facie justified in the payments to the mother, by the relation in which she stood to her child, and all such payments should be held good, so long as the daughter was unmarried. No account should therefore be directed anteriour to that pe *269 riod. For this opinion, I rely upon the cases before cited, of Robinson v. Tickell and Cooper v. Thornton.
It remains only to inquire, whether, if the child took an interest under the will, that interest ceased upon her attaining to maturity, and marrying and leaving the mother? With respect to the portion or shares, which the parties are to take in these bequests for maintenance and support, we have I think no assistance from precedents. In ordinary cases, these terms would most probably extend only to the maintenance and support of a testator’s family, during minority: as where he devises that his family shall be kept together and maintained out of his estate; in such a case, the trust must be executed, not upon the principle of giving equal portions to each, but of providing for the family as a judicious parent, or as the testator himself, had he lived, would have done. Such an execution of the trust, a court of equity should enforce, according to the spirit and intention of the testator’s will, although it is obvious, that the wants and necessities of the different members of the family, might be often unequal; and sometimes one, and sometimes another, might require unusual advances. In such a case, too, it would depend upon ulteriour provisions, whether the members of the family, as they grew up, and married and left the paternal mansion, with a view to a settlement in life, should or should not receive any portion of the revenues for their aid and support. But, in the present case, the testator having by the express provision of his will, placed his daughter and her child upon the same footing; having directed, that the trustees in whom the estate was vested, should apply it to the maintenance and support of both, by the same words; I can see nothing to limit the rights of the one, more than those of the other. If the application of the fund is to be made to the maintenance of the daughter while she lived, it must be, by the same words, extended to her child, while she lived; or if it is to bo limited in the case of the child, it must be limited in the case of the mother.
*270 , , meaning? Jn short, in the construction of this will, where the words . are so plain, I do not see what we can do but follow them. For, I ask, if the testator really did mean, what I think he meant, what plainer words could he have used, to convey And if this court decides, that these words shall not convey that meaning, what words shall a testator adopt to convey it? It is an important matter. For if a man provides that his wife shall receive the profits of his whole estate for the support of herself and his children, and these words be construed to convey the interest to her, to the exclusion of any distinct and independent right in them; then, if she marries again, the whole estate would go into the hands' of a second husband; or if she even remained single, either the children must continue to live with her with their families, or they must be turned adrift without patrimony, if they quit their mother’s mansion. These are consequences which I apprehend few testators can contemplate, as the result of a provision for the maintenance and support of their widows and children.
I therefore, am of opinion, that the decree should be reversed ; but the other judges concurring in the contrary opinion, it is affirmed.

 The late judge Stuart.